UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

ANTHONY DAVIS (#102252)                                CIVIL ACTION

VERSUS

RAMAN SINGH, ET AL.                                    NO. 16-0552-JWD-EWD

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on March 13, 2018.

                                                       _____
                                                       **ERIN WILDER-DOOMES**
                                                       **UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

ANTHONY DAVIS (#102252)                                    CIVIL ACTION

VERSUS

RAMAN SINGH, ET AL.                                        NO. 16-0552-JWD-EWD

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

This matter comes before the Court on Defendants' Motion for Summary Judgment (R. Doc. 15). This Motion is opposed.[1]

*Pro se* Plaintiff, an inmate confined at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, brought this action pursuant to 42 U.S.C. § 1983 against former DOC Medical Director Dr. Raman Singh, LSP Medical Director Dr. Randy Lavespere, Secretary James LeBlanc, Warden Darrell Vannoy and Ass't Warden Stephanie Lamartiniere, complaining that Defendants have violated his constitutional rights through deliberate indifference to his serious medical needs, specifically through a failure to provide adequate treatment or surgical intervention for his inguinal hernia(s) and hemorrhoids and through implementation of an alleged unconstitutional policy.

Defendants move for summary judgment relying upon the pleadings, a Statement of Undisputed Facts, certified copies of Plaintiff's pertinent medical records and administrative proceedings (previously filed herein, *see* R. Doc. 12), a copy of the Louisiana Department of

---

1   Out of an abundance of caution, Defendants interpreted Plaintiff's Opposition (R. Doc. 16) to their Motion for Summary Judgment (R. Doc. 115) as potentially including a prayer for summary judgment in his favor and so filed a response thereto. *See* R. Doc. 18. Notwithstanding, the Court does not interpret Plaintiff's Opposition as constituting a separate motion for summary judgment.

Corrections Referral Guidelines for Hernias, *see* R. Doc. 18-1, and the affidavits of Defendants Raman Singh and Randy Lavespere.

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Rule 56, Federal Rules of Civil Procedure. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). A party moving for summary judgment must inform the Court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact. *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 323. If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor. *Anderson v. Liberty Lobby, Inc.*, *supra*, 477 U.S. at 248. This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 323. Summary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a judgment in favor of the non-moving party. *Little v. Liquid Air Corp.*, *supra*, 37 F.3d at 1075. In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility

of witnesses, weigh the evidence, or resolve factual disputes. *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

In his Complaint, Plaintiff alleges that he suffers with hemorrhoids and with two inguinal hernias (one right-sided and one left-sided) that have caused him "daily pain" and that allegedly require surgical intervention. He alleges that he was first diagnosed with a right inguinal hernia approximately seven or eight years prior to the filing of his Complaint (in August 2016) and that since that time, he has been denied medical treatment that is reasonably necessary for his condition. He asserts that this hernia is large and causes intense pain and that, although he has been told that it is reducible, meaning that it can be physically manipulated such that any protrusion can be pushed back into his body, he complains that it only remains reduced if he is lying down and otherwise comes out with "standing, walking, sneezing, coughing or toileting." *See* R. Doc. 1 at p. 6. He alleges that the hernia causes loops of his intestines to descend into his scrotum which causes intense pain. He further asserts that when his intestines are pushed back into his stomach, they are often twisted or strangulated, such that he must endure substantial pain until gas or the passage of food causes the intestines to become untwisted. He further asserts that this is a dangerous practice and creates a dangerous situation that not only enlarges the hernia over time but can result in strangulation of the blood supply to the intestines such that an emergency life-threatening situation can develop very quickly. Relative to his second alleged inguinal hernia, Plaintiff alleges that this one is on the left side, is small, approximately "grape-sized," "has descended into his scrotum the last 7-8 years" and, although reducible, also causes pain and adverse symptomatology. Finally, he asserts that whereas he has been seen and evaluated by physicians at LSP on numerous occasions in connection with the right-sided hernia – and has now been provided with surgery therefor – prison officials delayed and refused to recommend surgery

solely because the hernia was reducible, failed to refer him for a consultation with a surgeon to evaluate the need for surgical intervention, and have refused to even document the left-sided hernia.[2]

Relative to Plaintiff's hemorrhoids, Plaintiff alleges that he suffers with multiple external hemorrhoids that cause him pain and interfere with his ability to defecate and to employ appropriate hygiene. He asserts that these hemorrhoids are constantly bleeding and smell horribly, causing him to experience conflict with co-inmates. He alleges that several hemorrhoid-like polyps were surgically removed approximately eight years prior to commencement of this proceeding. Plaintiff believes that the degree of discomfort warrants surgical intervention in connection with his hemorrhoids. Notwithstanding, he acknowledges that he has been informed by physicians at LSP that his hemorrhoids are characterized as being 'mild to moderate" and are not large or severe enough to warrant surgery.

In addition to the foregoing, Plaintiff asserts that there is a wrongful policy implemented by Defendant Raman Singh, the now-former DOC Medical Director, that addresses the care and treatment of inmates suffering with hernias and/or hemorrhoids who are confined at institutions governed by the Louisiana Department of Public Safety and Corrections. According to Plaintiff, this policy denies surgical intervention to all inmates with reducible hernias, obstructs even referrals for surgical evaluation for inmates, and delays treatment and surgical intervention until an inmate's condition has deteriorated and become emergent or life-threatening. Plaintiff asserts

---

2   It appears from Plaintiff's medical records and from the Affidavit of Defendant Dr. Lavespere that Plaintiff has never been diagnosed with a left-sided inguinal hernia. *See* R. Doc. 15-2 at p. 3. *See also* R. Doc. 12-2 at p. 206-07 (noting "no defect on L[eft]"). Notwithstanding, Plaintiff includes a conclusory allegation in his Complaint that this hernia has been diagnosed, *see* R. Doc. 1 at p. 7, and states in his Opposition to Defendants' Motion for Summary Judgment that the left-sided hernia was diagnosed on April 1, 2014. *See* R. Doc. 16 at p. 10.

that obtaining a necessary surgical referral from an LSP staff physician is obstructed by the referenced policy because "[a] request for permission to send a surgical referral from LSP staff physicians to [Department] Headquarters must first be approved by LSP Medical Director (Defendant Randy Lavespere) who then sends the request for surgical referral to [Department] Headquarters where Defendant Raman Singh must then approve the request to submit a surgical referral to the outside facility." *See* R. Doc. 1 at p. 9. According to Plaintiff, Defendants intentionally utilize this procedure to unreasonably delay authorizations for needed surgery consultations. In addition, Plaintiff asserts that Defendant Singh, the former DOC Medical Director, established generally four tiers of priority for all specialist, surgery and diagnostic consultation requests, *i.e.*, Level 1 – low; Level 2 – routine; Level 3 – urgent; and Level 4 – emergent, and Plaintiff complains that Defendants utilize these priority levels to further delay the process of obtaining surgical consultations. Plaintiff further asserts that by assigning a low priority level to a request for a surgical consultation, Defendants inevitably create inordinate delays in the scheduling of consultations by the outside facility. Finally, Plaintiff complains that Defendant Singh implemented a written policy relative to hernias that provides that reducible hernias may generally be managed non-operatively by primary care physicians at LSP and that no urgent condition is presented if a hernia is found to be reducible and largely asymptomatic. According to Plaintiff, this policy additionally provides four indications for when a specialty care referral may be appropriate, specifically where:

    Hernia is non reducible;

    Hernia is very large in size failing medical management;

    Any signs/symptoms indicating incarceration or strangulation, *i.e.*, diminished cough reflex; and

Significant pain/discomfort requiring narcotics/inpatient pain management.

Plaintiff asserts that whereas he meets all of these guideline for a specialty care referral, including the large size of his right-sided hernia and the daily pain and limitations that he suffers, he was not referred for a surgical consultation or, if he was so referred, the priority level was such that the consultation was unreasonably delayed.[3]

In response to Plaintiff's allegations, Defendants initially contend that Plaintiff's claims regarding events occurring more than a year prior to the filing of his Complaint are barred by the one-year limitations period applicable to claims asserted pursuant to 42 U.S.C. § 1983. As discussed hereafter, the Court finds that Defendants' contention in this regard is well-founded.

Inasmuch as there is no federal statute of limitations for claims brought pursuant to 42 U.S.C. § 1983, a federal court must borrow the forum state's general personal injury limitations period for such claims. *Owens v. Okure*, 488 U.S. 235, 249-50 (1989). In Louisiana, the applicable period of limitations is one year. La. Civ. Code Art. 3492. Moreover, under federal law, a cause of action under 42 U.S.C. § 1983 accrues "when the aggrieved party has either knowledge of the violation or notice of facts which, in the exercise of due diligence, would have led to actual knowledge thereof." *Piotrowski v. City of Houston*, 51 F.3d 512, 516 (5th Cir. 1995) (citations and internal quotation marks omitted). A plaintiff need not realize that a legal cause of action exists but must only have knowledge of the facts that support a claim. *Id.* Under Louisiana law, a party pleading a limitations defense normally has the burden of establishing the

---

3   Plaintiff asserts in his Complaint that he was informed by Defendant Lavespere that he had been scheduled for a surgical consultation and/or surgery, *see* R. Doc. 1 at pp. 12 and 15, but Plaintiff expresses concern that the surgery may have been cancelled or that a low priority or no priority had been set, such that the consultation could be indefinitely delayed. *See id*. Notwithstanding, it appears that the surgical repair of Plaintiff's right inguinal hernia was undertaken in August 2016, shortly after the filing of the Complaint herein.

elements of that defense. *See Savoy v. St. Landry Parish Council*, 2009 WL 4571851, *3 (W.D. La. Dec. 1, 2009). However, when the face of the plaintiff's Complaint reflects that more than a year has passed since the events complained of, the burden of proof shifts to the plaintiff to show that the limitations period has been interrupted or tolled. *Id.* In computing the applicable limitations period, the Court is obligated to take into account the time during which any administrative grievances filed by Plaintiff were pending within the prison system. *See Harris v. Hegmann*, 198 F.3d 153, 158 (5th Cir. 1999) (finding that the pendency of a properly-filed administrative grievance will toll or suspend the running of the one-year limitations period for a prisoner's claim).

In the instant case, Plaintiff alleges in his Complaint, which was filed in August 2016, that he has been suffering "daily pain" for more than seven or eight years prior to the filing thereof. According to Plaintiff's medical records, it appears that his complaints regarding a right inguinal hernia date back to May 2012. It further appears that a referral was made in August 2012 for a surgical consultation to evaluate the referenced hernia, which consultation thereafter occurred on October 15, 2012. As a result of the surgical consultation, surgery was recommended to repair Plaintiff's hernia, subject to a pre-screening colonoscopy. Notwithstanding, as conceded by Plaintiff, the surgery was not thereafter scheduled, and it appears that a determination was made to "hold" the referenced surgery in August 2013. As noted above, Plaintiff asserts that he continued to suffer unremitting pain on a daily basis for years thereafter. Further, with regard to Plaintiff's complaints regarding his hemorrhoids, the record reflects that he has complained about his symptoms related to this condition since at least March 2013 and has requested surgical intervention therefor which has not been provided. Based upon these facts, Plaintiff was unquestionably aware of the factual basis for his cause of action, *i.e.*, the asserted failure and

refusal of prison officials to adequately attend to his serious medical needs, long before the commencement of this proceeding in 2016. As a result, Plaintiff's cause of action may be seen to have accrued at such earlier point in time, and his claims relative to events occurring more than a year prior to the filing of the Complaint herein may be seen to be time-barred.

Considering that Plaintiff apparently submitted his Complaint herein for filing on or about August 22, 2016,[4] Plaintiff would ordinarily be limited to complaining regarding alleged wrongdoing by Defendants occurring during the year preceding that date, *i.e.*, on or after August 22, 2015. Notwithstanding, the record reflects that during the referenced one-year period, Plaintiff submitted an administrative grievance to prison officials which remained pending for approximately eighty (80) days (between February 23 and May 13, 2016).[5] *See* R. Doc. 12-1. Accordingly, the one-year limitations period is extended by that period of time, *see Harris v. Hegmann, supra*, and the Court concludes that Plaintiff may complain herein only regarding events occurring on or after June 3, 2015.[6] *See McBarron v. Federal Bureau of Prisons*, 332 Fed. Appx.

---

[4] Pursuant to the prison mailbox rule, an inmate's *pro se* federal Complaint is deemed to have been filed on the date the inmate presents it to prison officials or places it in the prison mailing system for transmission to the Court, not on the date that it is ultimately received or docketed by the receiving Court. *See Cooper v. Brookshire*, 70 F.3d 377, 379-80 (5th Cir. 1995); *Vicks v. Griffin*, 2008 WL 553186, *3 (E.D. La. Feb. 28, 2008). Thus, although Plaintiff's Complaint was received and docketed by this Court on August 29, 2016, the Court will utilize the date that he apparently signed the Complaint, August 22, 2016, and presumably submitted same to prison officials for mailing to the Court.

[5] Defendants calculate the pendency of Plaintiff's administrative remedy proceedings differently, but the Court notes that Plaintiff apparently signed his initial grievance on February 23, 2016, *see* R. Doc. 12-1 at p. 4, and apparently received the final Second Step denial of his grievance on May 13, 2016. *See id*. at p. 20.

[6] Plaintiff seeks to avoid the effect of the limitations period by asserting, for the first time in his Opposition to Defendants' Motion, that the wrongdoing has been "ongoing" and that he did not learn of the allegedly unconstitutional policy until February 2016, when he was allegedly informed thereof by other inmates. *See* R. Doc. 16 at p. 2 and R. Doc. 23 at p. 6. To the extent that Plaintiff, by this assertion, is seeking to invoke the doctrine of a "continuing tort," it is generally recognized that the continuing tort doctrine is inapposite in the context of claims of deliberate medical indifference where an inmate's complaints have been consistently responded to

961 (5th Cir. 2009) (finding no error in lower court's determination relative to limitations and upholding the finding, relative to the plaintiff's claim regarding non-treatment of his hernia, that the plaintiff "must, because of his ongoing health problems, have been aware at or near the time of the events of any inadequacy of his medical care"). *See also Smith v. Lavespere*, 2014 WL 4063927, *3 (M.D. La. Aug. 15, 2014) (applying one-year limitations period to an inmate's claim regarding a failure to appropriately treat his complaints of hemorrhoids).

Turning to a consideration of the claims that remain before this Court, Defendants next assert that they are entitled to qualified immunity in connection with Plaintiff's claims. Specifically, Defendants contend that Plaintiff's allegations are insufficient to establish that they have participated in any violation of Plaintiff's constitutional rights.

The qualified immunity defense is a familiar one and, employing a two-step process,

---

and where care has been provided, albeit not the care that the inmate desired. *See Nottingham v. Richardson*, 499 Fed. Appx. 368, 375 (5th Cir. 2012); *Grumbles v. Livingston*, 706 Fed. Appx. 818 (5th Cir. 2017). In *Nottingham*, for example, the Fifth Circuit addressed an inmate's claim of "inadequate medical care" and found that "each instance of potentially deliberate indifference ceased when he received medical attention." Further, because Nottingham had been seen and evaluated by paramedics on numerous occasions and had been provided with treatment and medication, "[t]here was no continuing denial of medical care and thus no continuing tort." *Cf., Cook v. Louisiana Workforce, L.L.C.*, 2017 WL 4322412 (M.D. La. Sept. 28, 2017) (where the continuing tort doctrine was applied to an inmate's claim that a diagnosed need for urgent surgical repair of a retinal tear was disregarded). Nor is this Court persuaded by Plaintiff's assertion that he had no basis to pursue his claims regarding the failure to provide surgical intervention for his hernia and hemorrhoid complaints until he allegedly learned of the purported offending policy. As in *McBarron v. Federal Bureau of Prisons*, *supra*, Plaintiff "must, because of his ongoing health problems, have been aware … of any inadequacy of his medical care" sufficient to place him on notice of the need to pursue his claims with greater alacrity. Plaintiff asserts that he was repeatedly told by prison officials that his hernia and hemorrhoids were not sufficiently serious to warrant surgical repair and that he would just have to "live with the pain." In the Court's view, such comments, followed by the alleged unremitting pain and by the alleged delay in obtaining a surgical consultation, should have placed Plaintiff on notice of the potential existence of his cause of action such that he had a duty to further investigate. *See Whitmore v. Cain*, 2015 WL 5012121 (M.D. La. Aug. 24, 2015) (rejecting application of the continuing tort doctrine where the inmate plaintiff complained of long-term solitary confinement based upon an alleged policy which the Court found he had sufficient notice of to further investigate).

operates to protect public officials who are performing discretionary tasks. *Huff v. Crites*, 473 Fed. Appx. 398 (5th Cir. 2012). Taking the facts as alleged in the light most favorable to Plaintiff, the Court considers whether Defendants' conduct violated Plaintiff's constitutional rights and whether the rights allegedly violated were clearly established at the time that the violation occurred. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (concluding that the rigid protocol mandated in *Saucier v. Katz*, 533 U.S. 194 (2001) – that called for consideration of the two-pronged analysis in a particular order – should not be "regarded as an inflexible requirement"). Under *Pearson v. Callahan*, courts have discretion to decide which of the two prongs of the analysis to address first. This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition. *Saucier v. Katz, supra*, 194 U.S. at 201. The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation that he confronted. *Id.* at 202. When a defendant invokes qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. *See Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009), *citing McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (*en banc*).

Undertaking the qualified immunity analysis with respect to Plaintiff's claims, the Court concludes that Defendants' Motion for Summary Judgment should be granted.

It is well-settled that to prevail on an Eighth Amendment claim for the deprivation of medical care, a prisoner must be able to show that appropriate care has been denied and that the denial has constituted "deliberate indifference to serious medical needs." *Thomas v. Carter*, 593 Fed. Appx. 338, 342 (5th Cir. 2014), *citing Estelle v. Gamble*, 429 U.S. 97 (1976). Whether Plaintiff has received the treatment or accommodation that he believes he should have is not the issue because a prisoner's mere disagreement with his medical treatment, absent exceptional

circumstances, does not support a claim of deliberate medical indifference. *Gobert v. Caldwell,* 463 F.3d 339, 346 (5th Cir. 2006). Nor do negligence, neglect, medical malpractice, misdiagnosis or unsuccessful medical treatment give rise to a § 1983 cause of action. *See Zaunbrecher v. Gaudin,* 641 Fed. Appx. 340 (5th Cir. 2016). Rather, "subjective recklessness as used in the criminal law" is the appropriate definition of "deliberate indifference" under the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 839-30 (1994). A prison official acts with deliberate indifference only if the official (1) "knows that inmates face a substantial risk of serious bodily harm," and (2) "disregards that risk by failing to take reasonable measures to abate it." *Gobert v. Caldwell*, *supra,* 463 F.3d at 346, *quoting Farmer v. Brennan, supra,* 511 U.S. at 847.

The deliberate indifference standard sets a very high bar. Plaintiff must be able to establish that Defendants "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001), *quoting Estelle v. Gamble, supra*. Further, a mere delay in providing medical treatment does not amount to a constitutional violation without both deliberate indifference and a resulting substantial harm. *Easter v. Powell,* 467 F.3d 459, 463 (5th Cir. 2006), *citing Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

In addition to the foregoing, in order for a prison official to be found liable under § 1983, the official must be shown to have been personally and directly involved in conduct causing an alleged deprivation of an inmate's constitutional rights, or there must be shown to be a causal connection between the actions of the official and the constitutional violation sought to be redressed. *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983). Any allegation that a named defendant is responsible for the actions of subordinate officers or co-employees under a theory of vicarious responsibility or *respondeat superior* is alone insufficient to state a claim under § 1983.

*See Ashcroft v. Iqbal*, *supra*, 556 U.S. at 676 (2009), *citing Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). *See also Bell v. Livingston*, 356 Fed. Appx. 715, 716-17 (5th Cir. 2009) (recognizing that "[a] supervisor may not be held liable for a civil rights violation under any theory of *respondeat superior* or vicarious liability"). Further, in the absence of direct personal participation by a supervisory official in an alleged constitutional violation, an inmate plaintiff must be able to show that the deprivation of his constitutional rights has occurred as a result of a subordinate's implementation of the supervisor's affirmative wrongful policies or as a result of a breach by the supervisor of an affirmative duty specially imposed by state law. *Lozano v. Smith*, *supra*, 718 F.2d at 768. Supervisory liability can be found to exist if a supervisory official implements a policy so deficient that the policy itself may be seen to be a repudiation of constitutional rights and may be seen to be the moving force behind a constitutional violation. *Thompkins v. Belt*, 828 F.2d 298 (5th Cir. 1987).

Applying the foregoing standards, the Court finds that Plaintiff has failed to come forward with a factual showing sufficient to overcome Defendants' assertion of qualified immunity. First, Plaintiff complains principally in this case regarding the implementation of an alleged wrongful policy at the Department level – and as employed at LSP – that intentionally delays, obstructs and denies surgical care to inmates and that has been the moving force behind the violation of his constitutional rights. Thus, with one exception, Plaintiff has not named as defendants herein his acknowledged primary care physician at LSP, Dr. Hal MacMurdo, or any of the other physicians and health care providers who have seen or treated him at LSP. The one exception is Dr. Randy Lavespere, who Plaintiff states has occasionally seen Plaintiff but who is identified principally as the Medical Director at LSP with primary responsibility for implementing the alleged wrongful policies at that facility. As a result, the Court does not interpret Plaintiff's Complaint as adequately stating a claim against any defendant relative to the care or treatment provided to

Plaintiff on any particular date.  Instead, the Court interprets Plaintiff's Complaint as asserting that the implementation of the alleged wrongful policy has itself resulted in a violation of his constitutional rights.  Notwithstanding, in order to support an actionable claim regarding the alleged wrongful policy, Plaintiff must be able to show that such a policy existed and that it has resulted in the actual violation of his constitutional rights and is the moving force behind such violation.

The Court concludes that this Plaintiff has been unable to do.  Whereas there is evidence in the record that reflects that in 2013 a policy was implemented that operated to indiscriminately deny hernia surgery to all inmates whose hernias were found to be reducible, *see* R. Doc. 15-2 and 15-3, it further appears that this policy was intended to be only "temporary" and was implemented because of the closure of the Earl K. Long Hospital in Baton Rouge, Louisiana, that had theretofore performed surgeries for DOC inmates.  It further appears that the DOC hernia policy was thereafter re-written in March 2014 to provide for the care and treatment of hernias, including surgical repair when warranted, in accordance with prevailing medical opinion.  *See id.  See also* R. Doc. 18-1.  Thus, whereas the temporary policy in 2013 had the effect of causing the denial of a request for a surgical consultation in connection with Plaintiff's right inguinal hernia in late 2013 and early 2014, *see* R. Doc. 23-2 at p. 1, Plaintiff's subsequent care and treatment has apparently been provided in connection with the re-written policy which has not been shown to be constitutionally deficient.[7]  Plaintiff has in fact pointed only to the single written policy, the Hernia Referral Guidelines implemented in 2014, that he contends to be inappropriate, and his remaining allegations relative to the intentional obstruction and delay of medical treatment are largely conclusory.  The Court has reviewed the referenced Hernia Referral Guidelines and, in

---

7    Additionally, as stated above, any claims arising out of the policy in existence in 2013 to early 2014 would be prescribed.

contrast to Plaintiff, does not find them to be unreasonable or unconstitutional as written. It is undisputed that not all diagnosed incidences of hernia or hemorrhoids warrant surgical intervention, and the fact that a hernia may be easily reducible is one factor that militates in favor of conservative management. The referenced Hernia Guidelines incorporate this concept and provide that, "[i]n general, no urgent condition exists if the hernia is REDUCIBLE or ASYMPTOMATIC EXCEPT FOR ITS PRESENCE." *See* R. Doc. 18-1 (emphasis in original). Notwithstanding, the Guidelines further recognize that other factors may exist that may militate in favor of additional evaluation for potential surgery or specialty care, including when the hernia is not reducible, is very large, is causing significant pain, or exhibits other complications such as incarceration or strangulation. *See id*. Thus, the Guidelines specifically provide "Indications for Specialty Care Referral" that take these factors into account. According to Defendants, this represents the prevailing medical opinion relative to hernia care and treatment. *See* R. Doc. 15-3. *See also Johnson v. Doughty*, 433 F.3d 1001, 1014 (7th Cir. 2006) (noting that there as three types of hernias: (1) a hernia that is strangulated, which is a medical emergency mandating surgery; (2) a hernia that is reducible yet so painful or debilitating that surgery is required; and (3) a hernia that is reducible and, given the dangers and risks inherent in any operation, can be treated through non-surgical means).

      There is nothing in the record, other than Plaintiff's unsubstantiated assertions, that LSP health care providers routinely disregard the "Indications" for specialty care included in the Hernia Guidelines, are instructed to do so, or indefinitely delay appropriate referrals until an inmate's condition has become life-threatening. Defendants specifically deny that there is any so-called "slow roll" policy at LSP that effectively obstructs and delays the process of obtaining specialty consultations or surgical procedures. To the contrary, Defendants assert that once a specialty referral is made, the scheduling of same is coordinated between DOC personnel and the hospital

or specialty facility and is outside the control of prison administrators. Nor is it unreasonable for prison health care providers to prioritize the need for specialty evaluations, from "low," to "routine," to "urgent," to "emergent," such that those inmates facing the most extreme conditions are provided with expedited consultations or evaluations. Whereas prisons are not entitled to invoke a lack of financial resources as sole justification for the denial of an inmate's constitutional rights, *see Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 748, 766 (1992), prison financial resources are not unlimited, and it is well-recognized that inmates are not entitled to the best medical care that is available or, by extension, to the most expeditious provision of such care. Prison physicians are expected to exercise their professional judgment regarding the care and treatment that are appropriate for the prisoners under their care, and this Court generally defers to the exercise of that judgment.

In addition to the foregoing, a review of Plaintiff's medical records during the relevant time period reflects that he has routinely been seen and provided with medical attention whenever he has complained about his hemorrhoids and/or hernia, and Plaintiff has not shown that this medical attention has been deficient. With the exception of a notation in October 2013 that the right inguinal hernia was not easily reducible at that time, *see* R. Doc. 12-2 at p. 261, his hernia has routinely been noted to be reducible, *see id*. at pp. 206 (hernia noted to be "easily reducible"), 209 (hernia noted to be "reducible"), 229 (hernia noted to be "spontaneously" reducible with no manipulation needed and no scrotal involvement), 232 (hernia noted to be a "small" defect that was "reduced now"), and 240 (hernia noted to be "reducible"), and his hemorrhoids have also been noted to be "small," "stable" or "mild to moderate." *See id*. at pp. 206 (noting that there was "no prolapse of hemorrhoids"), 209 (noting hemorrhoids to be "small"), and 220 (noting hemorrhoids to be "small"), 240 (noting hemorrhoids to be "stable"). On numerous occasions, when Plaintiff has sought medical treatment at LSP for unrelated complaints, he has voiced no complaint

regarding his hernia or hemorrhoids and has affirmatively indicated that he was experiencing no other medical problems or difficulties on those occasions. *See, e.g., id*. at pp. 212, 213, 214, 225, 235, 245, 260, and 264. While confined at LSP, Plaintiff has apparently been provided with surgery to correct a problem with his eye and with colonoscopy procedures in both 2011 and 2014. Ultimately, a referral for a surgical consultation was issued for an evaluation of Plaintiff's hemorrhoids in March 2016, and a similar referral was issued in connection with Plaintiff's hernia in July 2016. Finally, Plaintiff was scheduled for surgery to repair his right inguinal hernia in August 2016, and that surgery was performed at Lallie Kemp Hospital in Independence, Louisiana, shortly after the filing of Plaintiff's Complaint herein. It does not appear from the record that a recommendation has ever been made for the surgical repair of Plaintiff's hemorrhoids, which condition physicians at LSP have continued to manage conservatively with creams, ointments and medication. Nor does it appear that Plaintiff has *ever* been diagnosed with a left inguinal hernia as he alleges, and in the absence of a medical diagnosis of same, or anything other than Plaintiff's mere subjective belief that he suffers with this condition, there is no basis for a finding of non-treatment in connection therewith.

    In short, Plaintiff has not carried his burden of proof in establishing the existence of an unconstitutional policy implemented and employed at DOC and/or LSP that has been the moving force behind a denial of his constitutional rights in the form of deliberate indifference to his serious medical needs. Plaintiff's allegations relative thereto are largely conclusory, and despite his personal belief that surgical intervention has been warranted for his hernia earlier than he received it and for his hemorrhoids, his medical records do not reflect that his complaints have been ignored or that he has intentionally been treated incorrectly. As pointed out by Defendants, numerous reported decisions have upheld policies and practices that allow for the conservative treatment of hernias and hemorrhoids when such treatment has been found to be appropriate by medical

professionals.[8]  Further, Plaintiff has now in fact been provided with the surgical repair of his right inguinal hernia, and there is no suggestion in the record that any delay in obtaining such relief has resulted in substantial harm, which is a prerequisite for the viability of a claim of delay in the provision of medical care.  *See Easter v. Powell, supra,* 467 F.3d at 463.[9]

RECOMMENDATION

It is recommended that Defendants' Motion for Summary Judgment (R. Doc. 15) be granted, dismissing Plaintiff's claims asserted against Defendants herein, with prejudice, and that this action be dismissed.

Signed in Baton Rouge, Louisiana, on March 13, 2018.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[8] In the Court's view, Plaintiff's reliance on the case of *Baker v. Wilkinson*, 635 F. Supp. 2d 514 (W.D. La. 2009), is misplaced.  Not only are the specific facts in that case distinct from those alleged herein, but in that case, the defendants were alleged to have delayed and unreasonably refused a surgery that had been recommended for the plaintiff inmate by a prison physician solely because the surgery was "elective."  In the instant case, in contrast, it does not appear that surgery has ever been recommended for Plaintiff's hemorrhoids – that as noted above have been characterized by health care providers as "small" and "stable" – and it instead appears that Plaintiff's physicians have evaluated Plaintiff's hemorrhoids and have found that conservative treatment is appropriate.

[9] Considering that Plaintiff has been provided with surgical intervention in connection with his right inguinal hernia, and considering that he has not provided the Court with any evidence to establish the existence of a left inguinal hernia or to show that any medical professional has concluded that surgical intervention is warranted in connection with his hemorrhoids, the Court finds that Plaintiff has failed to show that he is entitled to injunctive relief in this case.